MARS, INCORPORATED, AND UNCLE BEN'S, INC.,
PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 39472-85T.    Filed February 11, 1987.

*Don S. Harnack*, for the petitioners.
*Bernard T. Bress* and *Cynthia J. Mattson*, for the respondent.

## OPINION

WILLIAMS, *Judge*:* The Commissioner determined that the transformation of a foreign partnership into a foreign corporation was in pursuance of a plan having as one of its principal purposes the avoidance of Federal income tax within the meaning of section 367.[1] Pursuant to section 7477, petitioners seek a declaratory judgment of this Court that respondent's determination is not reasonable.[2]

---

*By order of the Chief Judge, this case was reassigned to Judge Williams for decision and opinion.

[1] All section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue, unless otherwise indicated.

[2] The jurisdictional requirements of sec. 7477 have been satisfied: the case presents an actual controversy involving a determination by respondent that the transaction at issue is in pursuance of a plan having as a principal purpose the avoidance of Federal income tax within the meaning of sec. 367(a)(1); petitioners have exhausted their administrative remedies; and, the transaction occurred prior to Dec. 31, 1984, in a tax year ending prior to Jan. 1, 1985.

This Court must decide whether the transformation, under French law, of petitioners' French general partnership into a French corporation was in pursuance of a plan having as one of its principal purposes the avoidance of Federal income tax within the meaning of section 367. If it was, then the foreign corporation will not be considered to be a corporation for Federal income tax purposes.

This case was submitted for our decision on the stipulated administrative record pursuant to Rule 122 and Rule 217(b).[3] The facts and representations contained in the stipulated administrative record are assumed to be true for purposes of this case. Rule 217(b).

Petitioner Mars, Inc. (Mars), is a corporation formed under the laws of Delaware whose principal place of business was at Hackettstown, New Jersey, at the time the petition in this case was filed. Petitioner Uncle Ben's, Inc. (Uncle Ben's), is a wholly owned subsidiary of Mars, formed under the laws of Delaware. Uncle Ben's principal place of business was at Houston, Texas, at the time the petition in this case was filed and is included in Mars' consolidated Federal income tax returns. Uncle Ben's and Mars are each primarily engaged in the business of manufacturing, distributing, and selling food products in the United States and in other countries.

Mars, S.A. (MSA) was previously a French corporation and a wholly owned subsidiary of Mars Ltd., a wholly owned English subsidiary of Mars. MSA was primarily engaged in the business of selling confectionery products in France manufactured by affiliated corporations of Mars.

Mars Inc. et Compagnie (MIC) was a French partnership formed in 1974 under the laws of France as a "Societe en Nom Collectif." Mars and Uncle Ben's were the only partners of MIC. Mars owned 90 percent of the capital of MIC and 90 percent of the partnership's profits and losses. Uncle Ben's owned 10 percent of the capital of MIC and 10 percent of its profits and losses. MIC was primarily engaged in the business of manufacturing and selling confectionery products.

MIC was classified as a partnership for purposes of Federal income tax pursuant to a ruling by respondent

---

[3]All Rule references are to the Tax Court Rules of Practice and Procedure.

dated May 30, 1974. MIC "transformed" its juridical status pursuant to the laws of France from a French partnership to a French corporation on September 8, 1984, assuming the name Mars Incorporated et Compagnie, S.A. (MICSA).[4]

Immediately following the transformation, MICSA and MSA were merged pursuant to the laws of France. MICSA is the surviving corporation. Mars, the parent of MSA, received additional shares of MICSA as a result of the merger. Respondent issued a ruling letter dated June 27, 1984, which states in part that the merger of MSA into MICSA would be treated as a reorganization within the meaning of section 368(a)(1)(D).

The transformation of MIC into MICSA and related proposed transactions were motivated by the following business reasons:

(1) As partners in MIC, petitioners were fully liable for the obligations of the French partnership. Such "pass-through" liability was important to MIC at the inception of the enterprise to aid the partnership in its business dealings with suppliers and lenders. The business had developed sufficiently, however, to eliminate the necessity to operate as a partnership.

(2) The substantial growth in the business operations of MIC served as well to increase the potential liabilities to which petitioners were subject. Moreover, the effect of changes and developments in the political situation in France on the magnitude of petitioners' potential liabilities was unclear, and represented a significant risk to petitioners.

(3) The transformation and accompanying proposed transactions would improve the administrative and economic efficiency of the business operations of the various entities.

(4) The transformation and accompanying proposed transactions would improve the financial reporting position of the surviving entity both for French income tax purposes and for purposes of obtaining local financing.

(5) Lastly, the competitive advantage of petitioners is adversely affected by disclosure requirements under French law to which the partnership MIC was subject. The transformation of the partnership MIC into the French corporation MICSA would permit petitioners to avoid the disclosure requirements involved.[5]

---

[4] For purposes of French law a new and separate entity is not created. Instead, the transaction is treated as a transformation of the partnership MIC into the French corporation—"Societe Anonyme" (S.A.)—Mars Incorporated et Compagnie, S.A. (MICSA). We agree that the transformation should be treated as a transaction involving an exchange of the assets of the partnership MIC for stock of the newly formed French corporation MICSA within the meaning of sec. 351.

[5] It is not clear from the record whether the disclosure requirements relate to petitioners as partners in MIC or to the partnership operations themselves.

Petitioners filed a request for rulings pursuant to section 367 with respect to the transformation and merger, and to certain other proposed transactions, by letter dated September 16, 1981.[6] The request was supplemented by additional letters dated April 29, 1982, July 26, 1982, December 28, 1982, and June 28, 1984. Respondent issued an adverse ruling letter on April 3, 1984, supplemented by a ruling letter dated July 10, 1984, with respect to the proposed transformation of the French partnership MIC into the French corporation MICSA. Petitioners filed a protest of respondent's adverse determination by letter dated May 17, 1984, supplemented by letters dated November 20, 1984, and January 14, 1985. Respondent issued its final response to petitioner's protest on August 30, 1985. In its final ruling letter, respondent determined that:

[The] conversion of [MIC] into a French corporation is in pursuance of a plan having as one of its principal purposes the avoidance of federal income taxes within the meaning of section 367(a)(1) of the Code unless [petitioners] each agree to include in income, an "added amount." The added amount represents the excess of the net operating losses of [MIC] over its net operating income from its inception to the date of the transfer of its property to [MICSA], reduced to the extent the provisions of section 904(f)(3) require that [petitioners] recognize taxable income on the exchange in the taxable year of the transfer. However, the added amount shall be limited to the amount of gain which [petitioners] would have recognized if all of the transferred assets were transferred in a taxable sale or exchange. *See* Rev. Rul. 82-146, 1982-2 C.B. 84.

It is on this record that petitioners seek a declaratory judgment pursuant to section 7477.

Respondent does not challenge the business purposes for the transformation. The only reason that respondent refuses to grant a favorable ruling is petitioners' refusal to pay an "added amount" to recapture the tax benefit of prior losses passed through MIC. Respondent argues that his litigating position as expressed in Rev. Rul. 78-201, 1978-1 C.B. 91, should be accepted by this Court and that the legislative history of amendments to section 367 enacted in 1984 and

---

[6]In addition to the transformation of the partnership MIC into the corporation MICSA and the merger of MSA into MICSA, petitioners requested rulings with respect to proposed transactions relating to other affiliated corporations of petitioners as well. Respondent's rulings on these matters are not in dispute, and are not relevant to our inquiry herein.

the tax benefit rule mandate the acceptance of this litigating position.

Section 367 provides generally that where there is a transfer of certain property by a U.S. person to a foreign corporation, that corporation shall not be considered to be a corporation for Federal tax purposes unless, pursuant to a ruling request by petitioners, respondent determines that the transaction is not in pursuance of a plan having as one of its principal purposes the avoidance of Federal income tax.[7] Section 7477 provides for judicial review by this Court of respondent's determination. In reviewing respondent's adverse ruling we must determine whether his determination is reasonable.[8] Sec. 7477(a)(2); see also S. Rept. 94-938, at 266 (1976).

Respondent argues that petitioners have reduced their foreign source income by deducting losses incurred by the partnership MIC in previous taxable years, and that petitioners will avoid Federal income tax on future income earned by MICSA, since income earned by the foreign corporation that was formerly a partnership will not be

---

[7]Sec. 367(a)(1). (Pre-1985 version.)

SEC. 367(a) TRANSFERS OF PROPERTY FROM THE UNITED STATES.—

(1) GENERAL RULE.—If, in connection with any exchange described in section 332, 351, 354, 355, 356, or 361, there is a transfer of property (other than stock or securities of a foreign corporation which is a party to the exchange or a party to the reorganization) by a United States person to a foreign corporation, for purposes of determining the extent to which gain shall be recognized on such transfer, a foreign corporation shall not be considered to be a corporation unless, pursuant to a request filed not later than the close of the 183d day after the beginning of such transfer (and filed in such form and manner as may be prescribed by regulations by the Secretary), it is established to the satisfaction of the Secretary that such exchange is not in pursuance of a plan having as one of its principal purposes the avoidance of Federal income taxes.

[8]The appropriate standard of review of a determination by respondent pursuant to sec. 367(a)(1) is the "substantial evidence" standard. *Pitcher v. Commissioner*, 84 T.C. 85, 92-93 (1985); *Dittler Bros., Inc. v. Commissioner*, 72 T.C. 896, 909-910 (1979), affd. without published opinion 642 F.2d 1211 (5th Cir. 1981). This standard requires that we find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 620 (1966); see *Dittler Bros., Inc. v. Commissioner*, *supra* at 909-910. Petitioner must establish that respondent's determination is not supported by substantial evidence.

Respondent asks, however, that we overrule the line of cases in which we have consistently held that the appropriate standard of review is the "substantial evidence" standard. See *Pitcher v. Commissioner*, *supra* at 92, and cases cited therein. Respondent argues that the appropriate standard of review is to determine whether respondent acted in an "arbitrary and capricious" manner, and that Congress intended respondent be given broad discretion in making its determination pursuant to sec. 367. We find no support for respondent's position either in the legislative history of sec. 367 and its predecessors or in the legislative history of sec. 7477. Therefore, we refuse to overrule the line of well reasoned cases in which the substantial evidence standard has consistently been applied.

subject to Federal income tax. Respondent believes that the foreign incorporation of a branch operation which may turn from a losing operation to a profitable operation is presumptively a tax-avoidance plan within the meaning of section 367, and seeks a per se rule that requires the taxpayer to recognize in the taxable year of the transaction foreign source income in an "added amount" equal to the sum of the losses previously incurred by the branch operation with an adjustment pursuant to section 904(f)(3). Respondent contends that only in this way will petitioners' income be clearly reflected.

Respondent's arguments are not new. Indeed, we have considered and rejected them on at least five previous occasions. *Dittler Bros., Inc. v. Commissioner*, 72 T.C. 896 (1979), affd. without published opinion 642 F.2d 1211 (5th Cir. 1981); *Hershey Foods Corp. v. Commissioner*, 76 T.C. 312 (1981), Government appeal dismissed (3d Cir. 1981); *Kaiser Aluminum & Chemical Corp. v. Commissioner*, 76 T.C. 325 (1981); *Pitcher v. Commissioner*, 84 T.C. 85 (1985); and a Memorandum Opinion of this Court.[9]

Petitioners rely on our holding in *Hershey Foods Corp. v. Commissioner*, 76 T.C. 312 (1981), which is squarely on point. In *Hershey* we held on facts identical to those in this case that no potential for tax avoidance existed. Our holding in *Hershey* was based on the following conclusions: first, the taxpayer's income in *Hershey* was clearly reflected on an annual basis; second, there was no recovery of property which was once the subject of an income tax deduction; and third, the recovery of an "added amount" as defined by respondent pursuant to section 367 is inconsistent with the policy of the foreign loss recapture provisions of section 904(f)(3).

In this case, as in *Hershey*, respondent objects to the incorporation of a foreign loss branch by the taxpayer. Respondent believes that the incorporation of a foreign loss branch raises a presumption of a tax-avoidance purpose which petitioners can overcome only by recognizing an "added amount" of income as defined in respondent's

---

[9]*Ellis v. Commissioner*, T.C. Memo. 1985-511. See *Pitcher v. Commissioner*, 84 T.C. 85, 99 (1985) where respondent used the same catchwords as he uses in this case to summarize his position: "In modern tax parlance, a tax deferred is a tax saved." See Respondent's Brief at 18.

adverse ruling letter. We find respondent's position to be without merit for the reasons we expressed in *Hershey*. *Hershey Foods Corp. v. Commissioner*, 76 T.C. at 324. Petitioners have presented legitimate and compelling business reasons for the transaction which have not been challenged by respondent. We addressed fully each of the arguments presented by respondent in *Hershey*, which we hereby reaffirm.

Respondent has lost his arguments in this Court and in the Fifth Circuit and has failed to pursue an appeal in other cases. Respondent does, however, advance two new reasons why we should revisit the issues that have been well settled: (1) The Supreme Court's reformulation of the tax benefit rule in *United States v. Bliss Dairy, Inc.*, 460 U.S. 370 (1983), and (2) the 1984 amendments to section 367.

Respondent's reliance on the tax benefit rule is misplaced. Respondent argues that the Supreme Court has modified the tax benefit rule so that no actual recovery is required to invoke the tax benefit rule. Instead, any event which is "fundamentally inconsistent" with a prior deduction taken by a taxpayer mandates that the tax benefit rule be applied. See *United States v. Bliss Dairy, Inc.*, *supra*. While that statement may be true, it has no application here. There is no fundamentally inconsistent event here. There has been no recovery of previously deducted losses. The incorporation of a foreign loss branch is not a fundamentally inconsistent event as that term is defined in *Bliss Dairy*. To hold otherwise would suggest taxability under *Bliss Dairy* on incorporation of any partnership that had incurred losses.[10] The magnitude of the departure from existing law suggested by that theory is without analog.

Respondent insists, however, that the legislative history of recently enacted amendments to section 367 in the Tax Reform Act of 1984 states congressional intent to overrule

---

[10]Incorporating a domestic partnership into a domestic corporation has the same effect as incorporating a foreign partnership into a foreign corporation, with respect to the taxation of the partners-shareholders. Income (or loss) of the partnership is passed through to its partners. When the partnership is incorporated, the (former) partners no longer receive a share of income (or loss) of the corporation. If incorporation of a partnership is a fundamentally inconsistent event, we see no distinction for Federal income tax purposes, between requiring a foreign partnership to recapture past losses upon incorporation into a foreign corporation and requiring a domestic partnership to recapture past losses upon incorporation into a domestic corporation.

*Hershey*.[11] Amendments to section 367 enacted in the Tax Reform Act of 1984 apply to transfers or exchanges after December 31, 1984, in tax years ending after that date. Sec. 131(g), Pub. L. 98-369, 98 Stat. 665. However, it is well settled that "the views of one Congress as to the construction of a statute adopted many years before by another Congress have 'very little, if any, significance.'" *United States v. Southwestern Cable Co.*, 392 U.S. 157, 170 (1968); see also *Rainwater v. United States*, 356 U.S. 590 (1958). Moreover, there is no indication in the legislative history of the 1984 amendments to section 367 that Congress intended the provisions to be given retroactive effect. For these reasons, we decline to overrule *Hershey* and the long line of cases of which it is a part. Therefore, we conclude that respondent's determination that the transformation of the partnership MIC into the corporation MICSA was in pursuance of a plan having as one of its principal purposes the avoidance of Federal income tax within the meaning of section 367(a)(1) is unreasonable.

Accordingly,

*Decision will be entered for the petitioners.*

---

[11]In the report of the Senate Finance Committee accompanying the 1984 amendments to sec. 367 it is noted:

"The committee believes that the IRS position on this issue, as expressed in Rev. Rul. 78-201 as modified by subsequent rulings, is correct and is consistent with present law. The Tax Court, in *Hershey*, has taken the contrary view. The committee believes that it is important to clarify the law to prevent future tax avoidance. [S. Print 98-169 (Vol. 1), at 362 (1984).]"

See also H. Rept. 98-432 (Part 2), at 1318 (1984) ("The Tax Court, in *Hershey*, has taken the contrary, and incorrect, view.").